August Schlechte, Appellee, v. Chicago Electric Transit Company et al., Appellants.

## Gen. No. 15,151.

1. PERSONAL INJURIES—*refusal of plaintiff to submit to examination.* It is proper to ask the plaintiff upon the trial of his action for personal injuries whether he is willing to submit to a physical examination and if he refuses the fact of such refusal is a matter for the jury to consider upon testimony as to the extent, character and permanency of his injuries.

2. EVIDENCE—*as to what medical expert incompetent.* A medical expert examining a plaintiff in an action for personal injuries for the purpose of qualifying as a witness should not be allowed to state his conclusions predicated upon other than objective symptoms.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded. Opinion filed June 30, 1910. Rehearing denied October 17, 1910.

JOHN A. ROSE and FRANK L. KRIETE, for appellants.

WALTER A. BRENDECKE, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court of Cook county entered in favor of plaintiff and against defendant in an action to recover for injuries alleged to have been suffered by reason of negligence of the defendants' servants.

That the plaintiff was injured is not denied, nor is it questioned that defendants are liable for such injuries. Defendants' contention is that the damages are excessive, that the trial court erred in rulings on the admission of evidence and that plaintiff's counsel was guilty of misconduct prejudicial to defendants. It appears from the evidence that the plaintiff on the 13th of November, 1905, when riding on the front platform of a North Elston avenue car operated by defendants, was thrown from the car upon the pavement,

striking on his right side, and that he became unconscious. There is testimony tending to show that five of his ribs on the right side were broken, his right shoulder dislocated, and that two of the broken ribs penetrated through the pleura into the lung. It is urged by defendants that the evidence does not justify the claim that plaintiff suffered permanent disability entitling him to large damages. The verdict was for $7500. Plaintiff remitted $1000 and judgment was entered for $6500.

Plaintiff's counsel insist that the judgment is not excessive. Attention is called to evidence in plaintiff's behalf tending to show the severe nature of his fall, that he lay in bed two weeks unable to sleep much, suffering from fits of coughing accompanied by bloody expectoration and pain; that after that time the coughing and spitting decreased; that he was confined to his bed about a month and that it was five or six weeks before he was able to walk. There is evidence that after that time plaintiff rapidly grew better, did work about his house, and that nine months after the injury he opened a bakery and thereafter conducted his business regularly in the same manner as before the accident until in October, 1907, he sold it out. The hemorrhage which it is claimed appeared after the accident is attributed by one of plaintiff's physicians to a penetration by two broken ribs through the pleura into the lung. It is urged by defendant's counsel that the testimony upon which plaintiff's claim is based that he has been permanently injured, rests on subjective statements of plaintiff himself. The physician who was first called after the accident and treated plaintiff about six days was succeeded by plaintiff's family physician. He afterward made an examination of the plaintiff about a month before the trial, and testified on cross-examination that he examined plaintiff's shoulder, "not for the purpose of testifying, but for the purpose of finding out whether he had pain in his arm," knowing however that plaintiff had "a case coming up against the company." He says that plaintiff "has neuritis of that arm," resulting from the dislocation of the shoulder at the time of the accident and from "injury to that nerve;"

that the evidence he found of neuritis "was simply the course of the pain;" that this "is not entirely subjective; his statement about where the course of pain is, is not entirely so. I can tell he has pain in that nerve if I make pressure on the nerve without asking him. A man could not simulate that kind of pain, not the pain of neuritis of the arm;" that he could "simulate sometimes, yes sir." A motion was made to strike out the doctor's testimony as to neuritis of the arm on the ground that it was based on purely subjective evidence of pain. This motion was overruled, when the witness had stated that "neuritis in the arm is objective." In Greinke v. Chic. C. Ry. Co., 234 Ill. 564–571, it is said the rule "is well settled that a physician, when called as a witness, who has not treated the injured party but has examined him solely as a basis upon which to found an opinion to be given in a trial to recover damages for the injury sustained by the injured party, cannot testify to the statements made by the injured party to him, or in his presence, during such examination, or base an opinion upon the statements of the injured party. (Citing cases.) An expert witness called under such circumstances must base his opinion upon objective, and not subjective, conditions." The statement of the physician that "neuritis in the arm is objective" did not meet the objection. The question was not what the doctor's opinion was, but upon what evidence it was founded. He had based his conclusion that there was neuritis in the arm upon the "course of the pain," which in the nature of things is a subjective symptom and could be simulated, as the witness admits. Another physician testified in plaintiff's behalf on direct examination that "the prominent points on the ribs corresponding to the fractures were very sensitive to pressure; often if we touch those points the patient reveals a great deal of pain—making faces and so forth; it responds to the touch." The part of the answer "making faces and so forth" was stricken out on motion, but the fact remains that the witness' testimony as to these points being sensitive to pressure was based upon the subjective symptoms stated,

as was other testimony of the same kind to which objections were overruled.

We are not called upon however to determine whether the admission of this evidence was necessarily harmful. Defendants' attorneys urge that there was more serious error in the ruling which sustained an objection to the following question put to plaintiff on cross-examination: "Are you willing, Mr. Schlechte, to be examined by a doctor appointed either by the Court or by myself in the presence of your own doctor as to your present ailment on account of this injury, either here or at your home or at any place that will suit your convenience?" In City of Chicago v. McNally, 227 Ill. 14–20, the plaintiff was asked whether she was willing to submit to a physical examination. Objections to the question were sustained and the ruling assigned as error. The Supreme Court said the question whether or not one may be asked in the presence of the jury as to his or her willingness to submit to an examination had never been before it for decision; that the question in the form it was asked in that case was properly refused; but whether so or not, the appellant was not injured thereby inasmuch as appellant's counsel was allowed to comment upon the refusal of the plaintiff to submit to an examination by reputable physicians. In P. D. & E. Ry. Co. v. Rice, 144 Ill. 227–232, it was held that injustice is not likely to result to defendant from a refusal to order a plaintiff to submit to an examination by four physicians named, "especially when given the full benefit of the fact that the plaintiff has refused to submit voluntarily thereto, as was done in this case both by evidence and instructions to the jury." In Sertaut v. Crane Company, 142 Ill. App. 49–61, the refusal of the court to allow the plaintiff to be asked whether he would consent to an examination was held prejudicial error, on the ground that "the fact of refusal must be brought to the knowledge of the jury either by asking the plaintiff in the jury's presence whether he will submit to an examination, or asking him out of the jury's presence, and if he refuses, by pro-

ducing before the jury proof of his refusal." While it is the established doctrine in this State that a court has no power to grant a motion to compel a plaintiff to submit to a physical examination (P. D. & E. Ry. Co. v. Rice, *supra.* p. 232) it does not follow that the plaintiff may not be called upon to answer a question like that under consideration in order that in case of refusal, such fact may be made clear to the jury. If the plaintiff refuses to submit to such an examination the fact of refusal is a matter for the jury to consider in passing upon testimony as to the extent, character and permanency of plaintiff's injuries. In Union Pacific Ry. Co. v. Botsford, 141 U. S. 250–255, it is said that if one "unreasonably refuses to show his injuries, when asked to do so, that fact may be considered by the jury as bearing on his good faith, as in any other case of a party declining to produce the best evidence in his power." To the same effect is what was said in City of Freeport v. Isbell, 93 Ill. 385–386. And in Sandwich v. Dolan, 42 Ill. App. 53, it was said by Mr. Justice Cartwright: "If she had refused to submit to an examination which would disclose the truth, it would tend to show that the symptoms were exaggerated or feigned." While a plaintiff has the right to refuse to submit to a physicial examination, the defendant is entitled to have the fact of such refusal put before the jury clearly and unequivocally. It is true that the question under consideration in the case at bar was not "Will you submit" to such examination, but "Are you willing to be examined," etc., but we are unable to find any real distinction where as here the question went on to make it clear when and where and by whom such examination could be had. The objection sustained was not to the form of the question. If it had been sustained on that ground, the difficulty might have been obviated then and there. Nor would the propriety of the examination in this case in view of the nature of the evidence in plaintiff's behalf have been made more manifest by any statement of counsel or affidavit that such examination was necessary to a full and fair trial. The necessity of or at least advisability of such examination was we think manifest from

the nature of the plaintiff's proof, which consisted in large part of plaintiff's declarations and in part of opinions of his doctor's based in part on subjective conditions.

An expert called by defendants testified that "if neuritis of the radial nerve existed it would be objectively evident in the hand." But the conclusion of plaintiff's witness, upon which his opinion that neuritis existed was apparently based, rested on the conduct of the patient when the doctor pressed upon certain points, "making faces and so forth," clearly subjective symptoms and incompetent as evidence.

The refusal of the trial court to allow the question to be answered by the plaintiff left the jury in uncertainty on the material point, whether plaintiff himself was willing to submit to an examination and so furnish the best evidence in his power as to the character and extent of the injuries for which he is seeking compensation.

Complaint is, made of alleged prejudicial remarks and conduct of plaintiff's counsel on the trial. We think the record shows this objection to be well founded, but since the cause will probably be submitted to another jury, and in confident expectation that these errors will not be repeated, we will not extend this opinion to consider them in detail.

For reasons indicated the judgment of the Superior Court will be reversed and the cause remanded.

*Reversed and remanded.*