PLOTKIN, Judge,
concurs in part and dissents in part:
The gravamen of both defendants’ first assignment of error centers on an independent eyewitness’ account which was allegedly exculpatory to the defendants and which was not disclosed to the defendants prior to trial. Because I am of the opinion that the State should have disclosed the exculpatory material in its possession as to defendant Smith, I dissent from the majority’s opinion on that issue.
The witness in question is one Gregory Jones, the victim’s cousin. During separate pre-trial interviews with the state and defense counsel, Jones allegedly stated that he only saw Ryan Roberts shoot the victim. Additionally, Jones stated that he saw the shooter come from the nearby church rather than the sweet shop as stated by Ms. Kelly. Jones also stated that he was on the street *935 and only a half block away from the shooting. Thus, he had a significantly better view of the shooting than did Ms. Kelly.
Ann Walks, the assistant district attorney who interviewed Jones, stated during the hearing on a motion for new trial, that Jones told her that he only saw one of the defendants, Ryan Roberts, shoot the victim and that Jones told her that he was only a half block from the scene of the crime. The investigator who accompanied Ms. Wallis, Detective Riviere, testified at the same hearing that Jones stated that he saw the assailant come from the church rather than from the sweet shop as stated by Ms. Kelly and that Ms. Wallis took extensive notes during the interview. These witnesses’ testimonies clearly establish that the State had possession of these statements made by Jones prior to trial.
During a separate interview, Jones told defense counsel the same version of the facts and related that he had already spoken to the district attorney’s office. Defense counsel then requested several times, including one oral request specifically relating to Jones’ statement, that the State disclose any material in its possession that may be exculpatory. The State responded that it had none. After several requests, the trial court conducted an in camera inspection of the State’s file and determined that there was no exculpatory material in the State’s possession. However, it is unclear whether the Court examined the prosecutor’s notes of her interview with Jones.
The defendants argue that Jones’ statements constituted exculpatory evidence which the State is required to disclose under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) and La.C.Cr.P. arts. 718 and 729.3. The defendants aver that the fact that they now know the State had this eyewitness’ statement and failed to disclose it constitutes newly discovered evidence which would have produced a different verdict at trial as it would have seriously undermined Ms. Kelly’s credibility during trial and placed exculpatory evidence before the jury.
Clearly, the State has a duty to disclose any exculpatory evidence obtained in compliance with a motion for discovery of such material. La.C.Cr.P. arts. 718, 729.3. Thus, the first inquiry is whether the evidence was exculpatory. The prosecution contends that, for several reasons, Jones statement was not exculpatory as to either defendant.
The "State argues that the statement was unbelievable and could have easily been discredited on cross examination. Additionally, the State argues, and the majority agrees, that Jones’ statement only covers the period after the victim had already been shot and that Jones only saw the last shots fired by one defendant. Thus, this statement does not eliminate the possibility that there was another defendant. Finally, the State argues that at the very least the statements were clearly not exculpatory as to defendant Roberts, in fact the statements were inculpatory. Therefore, defendant Roberts has no claim that Brady material was withheld from him. I concur in the majority’s opinion that the statement was inculpatory as to defendant Roberts; thus he was not entitled to the statement. However, I do not agree that the statement was not exculpatory as to defendant Smith.
The State’s first argument, that it could easily discredit Jones’ statement, therefore it is not exculpatory, is flawed. While Jones’ testimony may have been subject to attack during cross examination it could have also been subject to rehabilitation by the defense. Thus, the State’s argument does not address the fact of whether the statement was exculpatory to one of the defendants.
LOST OR MISPLACED EXCULPATORY EVIDENCE:
The State’s argument that Jones’ statement was not exculpatory, because he stated that he arrived after the first shots, is an argument based upon the prosecutor’s memory of the interview. A review of the prosecutor’s testimony clearly demonstrates that the prosecutor who conducted the interview only had a vague recollection of the interview. For example, in answering one question during the hearing on the motion for new trial, the prosecutor responded “This is three months ago, it is hard for me to re *936 member ...” Additionally, as the majority quotes, the prosecutor stated “I wish I had my notes to be able to reflect my memory better.” With this vague recollection, the majority feels comfortable that the prosecutor’s statement concerning the interview was credible and showed that the State did not possess exculpatory evidence. I do not agree. First, as stated I feel that the prosecutor’s memory was vague at best. However, more importantly, the notes of the interview, which are the objective evidence of what was said during the interview were lost or misplaced.
The loss of crucial evidence, especially evidence which is favorable to the defendants and which should have been disclosed to the defendants, is inexcusable. As in civil cases, when key evidence is not introduced the presumption must be that the evidence would have been harmful to the side that failed to introduce the evidence. Egerb v. Stas sy 237 La. 1070, 112 So.2d 715 (La.1959); Dumas v. Jetson, 462 So.2d 266 (La.App. 1st Cir.1984). This presumption in criminal eases has been adopted in several jurisdictions. See State v. Tezino, 765 S.W.2d 482 (Tx.App. 1st Dist. 1988) (concealment of pertinent evidence by defendant supports an inference of guilty knowledge); People v. Hernandez, 143 A.D.2d 842, 533 N.Y.S.2d 488 (2d Dept.1988); People v. Wedgeworth, 156 A.D.2d 529, 548 N.Y.S.2d 790 (2d Dept.1989) (State’s failure to preserve photographic array used in identification procedures gave rise to inference that array was suggestive). I agree with the statement of the Illinois Appellate Court in Wilkey v. Illinois Racing Board, 65 Ill.App.3d 534, 21 Ill.Dec. 695, 381 N.E.2d 1380 (1st Dist.1978) wherein the court, addressing the presumption that suppressed evidence is harmful to the State’s case, stated the following:
The general wisdom of this rule is widely appreciated (see 29 Am.Jur.2d Evidence §§ 175-189 (1967)), and its application in a case where the party withholding pivotal evidence is the prosecutor is particularly apt, since the prosecutor’s position is one of public trust and he is not merely a partisan but rather an advocate of justice. Because the prosecutor is forbidden to conceal from a defendant in a criminal ease any substantial evidence favoring his defense, (citations omitted), it is especially appropriate to apply against the prosecution an adverse presumption where the prosecutor suppresses evidence potentially favorable to an accused. Likewise, since the prosecutor is forbidden to seek a criminal conviction of a person whose innocence is known to him it is proper that, where the prosecutor could have determined decisively the guilt or innocence of a defendant, yet elects instead to prosecute on the basis of imperfect evidence, his efforts should be checked by an adverse presumption.
21 Ill.Dec. at 700, 381 N.E.2d at 1385.
Because the notes obviously held pertinent material and there is evidence that the material was exculpatory, the fact that the notes are missing should give rise to the presumption that favorable material existed in the notes. I refuse to hold that Jones’ statement was not exculpatory on vague recollections of the prosecutor when that same prosecutor has lost the very evidence which would show whether the statement was exculpatory or not.
DEFENDANT ALREADY IN POSSESSION OF EXCULPATORY EVIDENCE:
The State argues that it, in fact, provided the statement of Jones on the day of trial. However, there is no proof of this on the record; therefore, such a claim is not supportable. The State next argues, and the majority agrees, that it was under no duty to disclose Jones’ statements because the defendant already had the statement. It is uneon-troverted that defense counsel interviewed Jones and received the substance of Jones’ statements to Ms. Wallis prior to trial. Thus, the question is: does the State owe a duty to disclose exculpatory evidence when the defendant already possesses the evidence?
The statutory mandate of La.C.Cr.P. art. 718 does not draw a distinction between evidence possessed by the defendant or not possessed by the defendant and in this case such a distinction is unwarranted. La. C.Cr.P. art. 718 provides in pertinent part as follows:
*937 Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, ... books, papers, documents, photographs ... which are within the possession, custody, or control of the state and which (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment ...
Clearly, this article allows a defendant the right to examine favorable material within the State’s control. The fact that a defendant may have obtained the substance of the material within the State’s control does not terminate that right. Often a defendant, as in this case, may come across evidence which leads him to make a discovery request of the State. Although the defendant may have discovered the substance of the material within the State’s control, he may not possess the entirety of the evidence or be aware of other factors relating to the evidence which may in turn lead to the discovery of more evidence in his favor. Access to the favorable material within the State’s control allows the defendant an opportunity to expand his investigation and complete his defense. A ruling which would terminate the defendant’s ability to fully investigate any exculpatory material within the State’s control would potentially eliminate the defendant’s ability to make out his defense.
The instant case is a shining example of how such a rule would effectively eliminate the defendant’s ability to fully defend himself. Clearly, it is presumed that the notes made by Ms. Wallis contained material favorable to defendant Smith. Had these notes been made available to defendant Smith he may have escaped conviction, first because the statements that he knew the State possessed were clearly exculpatory and, second, the notes may have contained even more information which would have exonerated him. However, because the notes have disappeared there is no way of estimating the potential effect the notes would have had on Smith’s ability to make out his defense.
Even though Smith possessed the substance of a portion of the statements made to the district attorney’s office, he was unable to introduce these statements before the jury because he was unable to corroborate the witness’ statements. With the State’s denial that it possessed any favorable material, Smith had to assume that Jones was lying when he said that he told the same exculpatory version to the prosecutors. However, had Smith been allowed access to the material upon his request he would have been able to corroborate the statements made by Jones and present them before the jury. Additionally, he may have been able to uncover more contradictions relating to Ms. Kelly’s account of the incident. Clearly, the State’s refusal to allow him to inspect the notes limited Smith’s ability to conduct his defense and present exculpatory material to the jury even though he possessed the substance of the statements. Therefore, in the instant case, La.C.Cr.P. art. 718 required the State to disclose Jones’ statements to the defendant notwithstanding the fact that defendant had already acquired the substance of the statements.
POTENTIAL IMPACT OF EXCULPATORY STATEMENT:
In the instant case, the missing notes play an even greater role because they were an objective source of evidence in a case where the evidence is far from overwhelming. Ms. Kelly testified that she was on her front porch when she witnessed the shooting. This was contrary to her statement to the investigating police officer, Officer Williams, when she stated that she was in her bedroom and viewed the shooting through her window. Officer Williams testified that Ms. Kelly told him her version of the facts twice. Additionally, during the hearing on the motion for new trial Jones testified that when he told Ms. Kelly that he had seen her son get shot she replied she had already seen it. Defense counsel then asked Jones where Ms. Kelly said she saw the shooting from and he replied that she said she saw it from her window. It is uneontroverted that Ms. Kelly could not have seen the shooting from inside her house. Thus, it is clear that Ms. Kelly’s claim that she viewed the shooting from her porch is precarious at best. The State argues that the jury had all of the contradictions before it and believed Ms. Kelly’s version of the events. However, the jury did not have before it the statement of another eyewitness whose statement that Ms. Kelly *938 saw the shooting out of the window would have corroborated Ms. Kelly’s own statement to the investigating officer. In fact, the jury did not have any of Jones’ statement before it, the substance of which contradicts Ms. Kelly on key issues.
The State claims that the defendant would have never been able to present Jones’ statements to the jury because Jones was a “loose cannon.” Thus, his statements, no matter how exculpatory, are immaterial. However, had defendant been allowed access to the statements made by Jones to the prosecution, he would have been able to prepare for a change in Jones’ testimony. Even with Jones changing his version of the facts, key' portions of his statements to the prosecution, including statements contradicting Ms. Kelly’s testimony, would have been before the jury. The fact that the defendant Smith did not have an opportunity to introduce this crucial evidence is in itself sufficient grounds to hold that the jury’s verdict would have been affected by the presence of the evidence. Additionally, this court finds that the State’s failure to disclose pivotal, exculpatory evidence and “loss” of that evidence gives rise to an adverse presumption against the State. The exclusion of this evidence undermined the fact finding purpose of the jury because the evidence could have had a significant impact on the jury’s determination of credibility of the State’s eyewitness and her version of the facts. Therefore, Albert Smith’s conviction should be reversed and his case remanded for a new trial.