(No. 30021.—

HERMAN DREZNER, Appellant, *vs.* CIVIL SERVICE COMMISSION OF THE STATE OF ILLINOIS *et al.,* Appellees.

*Opinion filed Sept. 18, 1947—Rehearing denied November 17, 1947.*

Joseph I. Bulger, and Ode L. Rankin, both of Chicago, for appellant.

George F. Barrett, Attorney General, of Springfield, (Albert E. Hallett, of Chicago, of counsel,) for appellees.

Mr. Justice Fulton delivered the opinion of the court:

This is an appeal from an order of the superior court of Cook County, approving and confirming an order of the State Civil Service Commission which, in turn, had approved an order of the Liquor Control Commission discharging the appellant herein, Herman Drezner, from a civil service position as a field investigator. The order was entered on November 13, 1946, in a proceeding brought under the provisions of the Administrative Review Act, approved May 8, 1945. The appeal was taken directly to this court because the State is an interested party.

On June 2, 1945, Herman Drezner, hereinafter called appellant, received a notice of discharge from the Liquor Control Commission on the ground that he did solicit and

attempt to obtain a bribe from one Dorothy Stoker for the alleged purpose of permitting the said Dorothy Stoker to avoid the payment of an additional liquor license fee. Upon receiving the notice of discharge, the appellant filed a statement in writing with the Civil Service Commission in accordance with the provisions of the Civil Service Act, alleging that his removal was without just cause, that on hearing he would be able to establish that fact, that he denied the charges made and requested a hearing. The hearing was held on October 16, 1945, before a trial board appointed by the Civil Service Commission to hear the charges.

The record and the evidence taken by the trial board disclose that the appellant was certified on May 1, 1939, as a special agent in the classified service of the State and was assigned to the Liquor Control Commission. His title was that of "Field Investigator II" in which position he served until the discharge of June 2, 1945. The appellant's work consisted of making special investigations upon specific directions of his chief in the office of the Liquor Control Commission. As a part of his duties, appellant often checked up on licenses to see if there were any discrepancies in them. Field investgators were not allowed by the department to receive any money from tavern keepers.

There is some conflict in the evidence as to the exact dates upon which Drezner contacted Dorothy Stoker. Drezner's testimony indicates that he called at the tavern of Dorothy Stoker in the middle of the afternoon of April 20, 1945. An examination of the licenses displayed therein indicated that Dorothy Stoker had a partner in her business, and he, therefore, made a report to his chief, Max Loeb, noting that the government license indicated that a sister of Dorothy Stoker was a partner in the business, but that the city and State licenses were in the name of Dorothy Stoker, only. Dorothy Stoker was not present in the tavern on the date of this call. A written report

of this April 20 call was received in the office of Max Loeb, the chief of special agents, on April 23, and Loeb made a note on Drezner's report, "Advised agent that partnership owes fee." On the same day, Loeb wrote a letter to Drezner headed "Special Assignment" in which it was suggested that, if Dorothy Stoker had added a partner in her business, an additional license fee had been incurred and that Drezner was to advise the office further.

The appellant then says that he saw and interviewed Dorothy Stoker on April 28, 1945, and that he wrote a report to the office on the face of the special assignment given him by Max Loeb to the effect that he had the matter up for discussion with Dorothy Stoker and that Dorothy Stoker informed him that she had been instructed that it was not necessary to have the license in both names and she had, therefore, made the application in her own name. The appellant, at the conclusion of this report, stated that he thought the error was an honest mistake and that she should not be asked to make the application for the partnership license as suggested by Loeb. This report was stamped as received in the office of Max Loeb on May 3, 1945..

Upon the receipt of this report, Max Loeb in a telephone conversation requested the appellant to obtain an affidavit from Dorothy Stoker as to these facts, to be filed in the office as a basis for waiving the requirement of a partnership license. The appellant again called on Dorothy Stoker, according to his testimony, on May 5, 1945, to obtain the requested affidavit. At this interview Dorothy Stoker informed him that she had been told by someone in the city hall that she did not need any other license than one in her own name. On this basis, the appellant sent another report to Max Loeb in which he stated that, in view of the fact that Dorothy Stoker had not been misled by someone in the office of the State commission, the additional license fee should be paid by Dorothy Stoker. He stated that she asked for an application and promised to

pay the fee. This special report of May 5 is marked as received in the office of Max Loeb on May 10. The appellant states he sent applications to Dorothy Stoker and his story in this regard is borne out by a stenographer in the office of the commission who stated that she typed an envelope addressed to Miss Stoker and saw the appellant place it in the outgoing office mail.

Max Loeb, the chief of the special agents in the office of the Liquor Control Commission, testified that after he had received this final report from the appellant he had a discussion with him during which he argued with the appellant as to whether or not the additional fee should be paid and stated that he gave orders to the appellant to drop the matter entirely.

The appellant stated that he did nothing further concerning this matter and that he never talked to Dorothy Stoker subsequent to May 5, 1945.

Dorothy Stoker, on the other hand, although very confused as to the dates in question, placed the first time when she saw the appellant herein as May 5, 1945. She states that on April 28, 1945, she was not in the tavern when Drezner called. She further states that on May 5, 1945, the appellant had told her that there was a discrepancy between her State and Federal liquor licenses and that her State license had to be corrected. She says he further told her that the amount of the penalty was out of the hands of the office and was up to him and she says that she told him that she would pay whatever was due.

Dorothy Stoker further states that she never received any application which Drezner claimed to have mailed her but that he called on her at the tavern on Saturday, May 12, 1945, and again on Monday, May 14, 1945. On May 12 she says that they had a conversation at a table in a small room just off the bar and at that time Drezner told her it would cost $41.66 for the license fee. He further told her at that time, she states, that if she went along

with him it would cost her only $20. She further states that on May 14 the appellant returned to the tavern and she offered him a check for the $20 but that he refused to accept a check. At that time she asked Drezner, "If this isn't a fine or a penalty, what is it?"

One Harriet Wald was called as a witness by the commission. Her testimony is not particularly helpful inasmuch as she experienced considerable confusion in trying to place dates. Appellees admit that there is much confusion as to dates to be found in her testimony.

Shortly after the date of May 14, but prior to May 21, 1945, Dorothy Stoker was in contact with her lawyers and with officials of the Liquor Control Commission. It was not until May 21, 1945, however, that she made any mention of the $20 bribe offer alleged against Drezner.

The discharge notice of June 2, 1945, followed the meeting with Dorothy Stoker in the offices of the Illinois Liquor Commission. At the subsequent hearing of the cause before two hearing officers appointed by the Civil Service Commission, the evidence was taken and, at the conclusion of the hearing, the hearing officers made certain findings, the essential portions of which found that there was much direct controversy in the testimony but that after considering such testimony, it was the opinion of the trial board that the appellant was guilty of the charges; that the appellant went to the tavern operated by Dorothy Stoker early in May, 1945, and advised her an additional license fee was due because she and her sister were partners; that he again visited her tavern on May 12, 1945, and made the alleged bribe offer and that he returned again on May 14, 1945, to obtain the money; that she refused to give him cash; that Dorothy Stoker reported the matter to the Liquor Control Commission on May 21, 1945; that Max Loeb, Chief Agent, instructed the appellant to get an affidavit from Dorothy Stoker to justify the noncollection of any further fee; that the appellant testified that he was

not instructed by Loeb to get an affidavit; that the statements of appellant were in direct controversy with the statements of Loeb and Dorothy Stoker and for that reason his testimony was discounted; that appellant attempted to get the bribe from Dorothy Stoker to settle an alleged liability due the Liquor Control Commission and that the appellant did not carry out the instructions of Loeb in obtaining the affidavit. The findings of the board concluded with the finding that the appellant was guilty as alleged and recommended that his discharge become final.

At the hearing before the superior court judge on the complaint of the appellant herein, a request was made for a continuance by the Attorney General's office. The hearing on this occasion consisted of the following:

"The Court: What is this, gentlemen?

"Mr. Thiesse: I wish to have this matter continued for a short time due to the fact that I am engaged.

"The Court: There is no need to put this over because, as I see the record, it is a question of whether to believe Drezner or the tavern owner as to the $20 bribe solicitation. The commission elected to believe the tavern owner and I am not going to disturb the ruling of the commission. Therefore, draw up your order sustaining the findings of the commission.

"Mr. Bulger: What will be the bond?

"The Court: Well, you gentlemen get together and figure that out for yourselves."

These were all the proceedings had in the hearing on the complaint on appeal.

This proceeding is brought under the Administrative Review Act of 1945. (Ill. Rev. Stat. 1945, chap. 110, par. 264 *et seq.*) This act, in essence, provides for the procedure to be followed to review the decisions of any administrative agency if the act creating or conferring power on such agency by express reference adopts the provisions of this act. The act provides, in section 4, that the action

226

to review a final administrative decision should be brought by the filing of a complaint and the issuance of a summons. The jurisdiction to review final administrative decisions is vested in the circuit and superior courts. Parties made defendant may file an answer in the cause. Section 11 of the act provides that the hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence shall be heard by the court and the findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct.

Section 12 of the Civil Service Act (Ill. Rev. Stat. 1945, chap. 24½, par. 14,) provides that in circumstances of this type the Civil Service Commission upon proper application should grant a hearing and that at the conclusion of such hearing the commission or the board· or the officer appointed by the commission shall make a finding and decision determining whether or not the removal, discharge or demotion was made for just cause. The act further provides that the Administrative Review Act shall apply to proceedings for judicial review of final administrative decisions of the Civil Service Commission. It was under this section that the hearing board made its findings, resulting in the conclusion that the dismissal of the appellant herein had been for a just cause.

It is to be noted that the Administrative Review Act does not attempt to set forth any substantive rules of law other than that the findings of the administrative agency are to be considered as *prima facie* true and correct. In construing this provision, in cases involving acts containing and embodying this provision, we have held that the findings of the hearing body must be supported by the evidence. *State Public Utilities Com. ex rel. Chicago Board of Trade* v. *Toledo, St. Louis and Western Railroad Co.* 286 Ill. 582.

We have also held that it is not within the province of the court to disturb the findings of fact made by an administrative agency unless manifestly against the weight of the evidence, but, on the other hand, if the finding of the administrative agency is against the weight of the evidence, it is the duty of the court to set aside the decision of the administrative agency. *Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301; *Liberty Foundries Co.* v. *Industrial Com.* 373 Ill. 146; *Brotherhood of Railroad Trainmen* v. *Elgin, Joliet and Eastern Railway Co.* 374 Ill. 60.

Both parties herein agree that the charges in cases of this kind need be proved by only a preponderance of the evidence and need not be proved beyond a reasonable doubt. *Sundquist* v. *Hardware Mutual Fire Ins. Co.* 371 Ill. 360.

It should be further borne in mind that while the proceedings in this particular cause are civil proceedings, conduct constituting a crime is charged. While we adopt and hold that the charge need only be proved by a preponderance of the evidence, in accordance with the rule heretofore enunciated, we believe that the evidence of guilt should be clear and convincing. In disbarment proceedings, we have often held that where conduct constituting a crime is charged as grounds for disbarment, the evidence to support such charge must be clear and convincing even though the rules of evidence applicable in criminal cases do not prevail. *In re Malmin,* 364 Ill. 164; *People ex rel. Chicago Bar Ass'n,* v. *Lotterman,* 353 Ill. 399; *People ex rel. Cline* v. *Kerker,* 315 Ill. 572.

While the Administrative Review Act does not purport to give a reviewing court the right to reweigh the evidence in the cause appealed from, still the courts have the power, as indicated by the decisions herein cited under other administrative acts, to consider the record to determine if the findings of the administrative agency are borne

out by the evidence in the cause and whether or not the findings are against the manifest weight of the evidence or if there is substantial evidence in the record to support the findings.

As found by the hearing officers, there was much direct conflict in the testimony between the stories of the appellant herein and Dorothy Stoker. The record clearly indicates that both Dorothy Stoker and her supporting witness, Harriet Wald, could not testify either as to months or days with any degree of certainty, but after considerable questioning finally defined the dates upon which they saw the appellant as being May 5, May 12 and May 14, 1945.

The appellant, while he testified alone, is corroborated to some extent by his filed reports and the word of his chief, Max Loeb. It is to be noted that Dorothy Stoker states that the appellant talked to her on three different occasions. The appellant admits that he was in the tavern of Dorothy Stoker on three different occasions.

Paragraph 3 of the findings of the trial board set forth that appellant went to the tavern of Dorothy Stoker only in May, 1945, and that on May 12 and May 14, 1945, he attempted to obtain the alleged bribe. It further states that Dorothy Stoker reported the transaction to the Liquor Control Commission on May 21. We believe this finding to be in disagreement with the evidence in this cause.

The evidence as to the visitation to the tavern depends upon the stories of the two parties involved, as well as the official reports of the Liquor Control Commission and the testimony of the chief of agents. The reports were filed before this controversy arose and some credence must be given to the reports which are marked, "Received" on certain days in the offices of the Liquor Control Commission. There is no question but what on April 23, a report was received by the commission from the appellant herein setting forth the results of his investigation of Dorothy Stoker's tavern on April 20, 1945. Max Loeb testified,

and he also is borne out by the records of the commission, that Drezner was sent back to make a further investigation. On May 3, 1945, another report was received from the appellant herein setting forth the results of his visit and conversation with Dorothy Stoker on April 28, 1945. Loeb testified that he had a telephone conversation with the appellant concerning that report and directed him to return to the tavern again. On May 10, 1945, still before this controversy arose, a report was received from the appellant setting forth the results of his conversation with Dorothy Stoker on May 5. It should be noted that the only dates which are fully corroborated in this cause are the dates testified to by the appellant herein and such corroboration is found in the reports of the appellant to his chief in the office of the Liquor Control Commission. It is obvious that the story and the testimony herein depend upon the background leading up to the alleged bribe offer. Once the entire testimony of all parties is considered and the necessary corroborative evidence taken into consideration, it is apparent that there is no substantial evidence in the record to support this paragraph of the findings.

Paragraph 6 of the findings set forth that the appellant testified that he was not instructed by Loeb to obtain an affidavit from Dorothy Stoker. An examination of the record discloses that this paragraph is true only in part. It does not purport to set forth the contradictory orders of Loeb regarding the affidavit which were given appellant on two separate and distinct occasions. It is true that appellant testified he was not instructed by Loeb to get an affidavit, but this conversation took place on May 10, 1945, subsequent to a previous order of Loeb on May 3 to get the requisite affidavit from Dorothy Stoker. The appellant and Loeb both testified as to these two conversations. This paragraph, then, in not setting forth all the instructions of Loeb to his agent, is not consonant with the evidence.

Paragraph 7 finds that the statements of the appellant were in direct controversy with those of his supervisor and Dorothy Stoker and for that reason were discounted. Such a finding is not supported by the evidence in the cause nor is there any basis for it in this record. Appellant in his brief admits that he and Dorothy Stoker were not in accord as to the dates in question. However, a careful reading of the record discloses that Max Loeb and the appellant herein are in absolute agreement as to the approximate time of conversations between them, as to the subject matter of such conversations and as to the facts and circumstances leading up to those conversations. If anything, the testimony of Loeb supports the testimony of the appellant and is contrary to the statements of Dorothy Stoker. Loeb did not support Dorothy Stoker's statements as to dates, but stated contrarily that the records received by the commission were noted in his handwriting, that he had perused them and that they were received on the dates stated thereon. He further supported the appellant herein as to the conversations and argument they had concerning the necessity of obtaining further fees from Dorothy Stoker. Concerning this paragraph, it is sufficient to say that any holding that appellant should be discredited by reason of the statements of his supervising officer is against the manifest weight of the evidence in this cause.

Paragraph 8 found that, in violation of the rules of the Liquor Control Commission, the appellant attempted to get a bribe from Dorothy Stoker. The only evidence in this regard is the unsupported word of Dorothy Stoker who was admittedly uncertain in her testimony. There is no evidence in the record, substantial or otherwise, to support such a finding. The statements of Dorothy Stoker were controverted in every instance by the appellant herein and his testimony is the only testimony in the cause which is corroborated in any way. Where a crime is charged in

a civil proceeding, the evidence proving such a crime should be clear and convincing. That is not the case here.

The finding also states that the appellant did not carry out the instructions of his supervisor, Max Loeb, in obtaining an affidavit from Dorothy Stoker. It should be pointed out that the evidence is clear that the appellant was ordered by Max Loeb not to obtain any affidavit and to let the matter drop. In these circumstances, the finding again fails to conform to the evidence in the cause.

A review of the record discloses that the order and recommendation of the hearing board, as adopted by the commission, is against the manifest weight of the evidence, is not supported by substantial evidence in the record, nor do the findings conform to the evidence in the cause. For these reasons, this cause must be reversed.

There is another ground for reversal herein. The act provides for the procedure to be followed in obtaining a review of the administrative body's decision by the superior or circuit court. The act must be followed and its provisions are meant to be followed in entirety and not in any perfunctory manner. When the complaint was filed herein in the superior court, it was the duty of the judge in that court to hear the arguments and to review the proceedings thoroughly before making his decision. In this cause this was not done. The law requires something more than the statement found in the record here. The legislature did not intend that the act should be so lightly followed nor was it intended nor does the law allow a stamp of approval to be placed on the findings of an administrative agency merely because such agency heard the witnesses and made the requisite findings.

Appellant further urges that he is entitled to reinstatement and payment of salary from his discharge on June 2, 1945. With this contention, we do not agree. Section 11 of the Administrative Review Act (Ill. Rev. Stat. 1945, chapter 110, par. 274,) provides that the hearing and de-

termination on review shall extend to all questions of law and fact presented by the entire record before the court. Under section 12 of the same act, the court has the power to affirm or reverse the decision of the administrative agency in whole or in part or it may remand the cause for the taking of additional evidence. There is no provision for the joinder of a *mandamus* action for the restoration to the position and an action for back wages. The purpose of the Administrative Review Act under these sections is to provide a judicial review of the decisions of administrative agencies and under its procedure the court appealed to may not go outside of the record certified to it. There is nothing in the record which would justify the court in entering a judgment for the payment of money for back wages.

For the reasons stated herein, the order of the superior court of Cook County is reversed.

*Order reversed.*