MORTON LIEBERMAN, Plaintiff-Appellee, *v.* JAMES ROCHFORD, Superintendent of Police of the City of Chicago, *et al.*, Defendants-Appellants.

First District (4th Division)   No. 61390

Opinion filed November 12, 1976.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellants.

Arthur H. Zimmerman and Dianna D. Zimmerman, both of Chicago, for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County reversing the decision of the Chicago Police Board (Board) which discharged plaintiff from the Chicago Police Department (Department).

The sole issue presented for review is whether the findings and decision of the Board were against the manifest weight of the evidence.

On July 3, 1973, the superintendent of police filed charges with the Board alleging that plaintiff had violated Rule 2 of the Department, specifically that "on January 19, 1973, he did attempt to intervene in an investigation by the Bolingbrook Police Department and the State's Attorney's Office of Cook County."

Paul Huebl, a former sheriff's policeman, was picked up on suspicion by the Bolingbrook police on January 19, 1973. Huebl was questioned about his presence near the home of a complainant against a judge of the circuit court of Cook County, and requested that the Bolingbrook police telephone plaintiff, a Chicago policeman. This exchange resulted in a series of telephone conversations between two Bolingbrook policemen and plaintiff and in a meeting between an assistant State's attorney and plaintiff. Eight witnesses and three character witnesses testified at the hearing before the Board. The record, however, reveals discrepancies as to the existence of certain telephone calls and the contents of the meeting and various conversations.

Four witnesses were called to testify on behalf of the Department, two being essential to the Department's case against plaintiff. Chief Ronald A. Johnson of the Bolingbrook Police Department testified that he complied with Huebl's request and telephoned plaintiff who told him that Huebl was a former sheriff's policeman. Johnson further stated that plaintiff urged him not to book Huebl, but promised that "he would see that it was made right for me for taking this into consideration." Following this first conversation, Johnson telephoned the office of the Cook County State's Attorney and reported the incident to Morton Friedman. According to Johnson, plaintiff telephoned the Bolingbrook police concerning Huebl four times during the evening of January 19, 1973—at 7 p.m., 8 p.m., 10:30 p.m. and midnight.

Morton Friedman, Chief of the Criminal Division of the office of the Cook County State's Attorney, testified that after talking with Johnson he telephoned plaintiff and arranged for a meeting at plaintiff's police district. Friedman then rode with plaintiff and Patrolman James J. O'Donnell in their squad car while they performed their police duties. Friedman and plaintiff discussed the Huebl matter and, according to Friedman, plaintiff suggested that they arrange for a detective's license "as a cover to insulate him from arrest." After arranging for the "cover," they returned to plaintiff's police district where Friedman's representations to the highest ranking officer on duty resulted in the detention of plaintiff and his partner on a charge of obstructing justice.

Plaintiff called four witnesses and three character witnesses to testify on his behalf. Former Bolingbrook policeman James Franecki related that he

had two telephone conversations with plaintiff on the evening of January 19, 1973, and that plaintiff made no attempts to interfere with him in any investigation. Patrolman James J. O'Donnell corroborated plaintiff's testimony that Friedman initiated all plans to help Huebl and interrupted their tour of duty.

Departmental charges were placed against plaintiff, but not against O'Donnell since the latter was deemed not to be sufficiently involved. After a hearing before the board, an order was entered discharging plaintiff from the Chicago Police Department. Plaintiff filed an administrative review proceeding in the circuit court of Cook County which resulted in a reversal of the Board's order. This appeal followed.

Defendants contend that the circuit court erred in reversing the Board since the findings and conclusions of an administrative agency are to be held *prima facie* true and correct. They reason that an opposite conclusion is not clearly evident, and the circuit court has, therefore, improperly reweighed the evidence. Plaintiff argues that defendants' order that he had violated departmental Rule 2 was not supported by the manifest weight of the evidence. Specifically, he calls attention to the vagueness of the charge and conflicting testimony as to the manner and means of his alleged intervention with the Bolingbrook investigation.

While the findings and conclusions of an administrative agency are to be held *prima facie* true and correct (Ill. Rev. Stat. 1973, ch. 110, par. 274), our supreme court has construed this provision to limit the function of the reviewing court to ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713.) Moreover, a reviewing court will not reweigh the evidence and determine the credibility of the witnesses. (*Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 289 N.E.2d 32.) A reviewing court may, however, reverse an administrative body's findings where the findings of that body are against the manifest weight of the evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371.) An examination will thus be made on review to determine whether enough evidence exists on record to support the findings of violation. *Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504. .

The Board found plaintiff to have violated Rule 2, a general rule of the Department, which prohibits "any action or conduct which impedes the Department's efforts to achieve its policy and goal or brings discredit upon the Department." Defendants find support for their order in the testimony of Johnson and Friedman. Both Johnson and Friedman, however, initiated the contact with plaintiff, Johnson by telephone and Friedman by arrangement of a meeting with plaintiff in plaintiff's squad car. It is undisputed that Bolingbrook Officer Franecki initially contacted

plaintiff pursuant to Huebl's reference to plaintiff by name. Friedman's testimony contradicted Johnson as to phone calls made after 8:30 p.m. Franecki's testimony conflicted with that of Johnson as to the content of the phone conversations. O'Donnell's testimony corroborated plaintiff's statement that Friedman initiated all plans to help Huebl and interrupted their tour of duty. Moreover, Johnson had destroyed his personal notes and admitted that the police reports filed within a week of the incident made no mention of improper conduct by plaintiff. We believe there is insufficient evidence in the record to show an interference by plaintiff which would amount to a violation of Rule 2 of the Department. The findings and decision of the Board were against the manifest weight of the evidence. Accordingly, we affirm the judgment of the circuit court.

Judgment affirmed.

JOHNSON, P. J., and BURMAN, J., concur.