WAYNE J. ZIONS *et al.*, Plaintiffs-Appellants, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 77-1436

Opinion filed December 20, 1978.—Rehearing denied January 31, 1979.

William J. Martin, of Chicago, for appellant Wayne Zions.

James Greco, of Gary, Indiana, for appellant John Carioscia.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Steven G. Revethis, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

Plaintiffs Wayne J. Zions and John Carioscia, both former Chicago policemen, filed a complaint in the circuit court seeking review of the administrative action of the defendant Police Board of the City of Chicago (the Board) finding them guilty of violating department rules and discharging them from the force. This appeal is from the circuit court's decision affirming their discharges. Each officer contends that the Board's decision was against the manifest weight of the evidence, and should have been reversed by the circuit court. Both officers also contend that discharge was inappropriate punishment for their offenses.

The incident which led to charges being preferred against the plaintiffs occurred in the early morning hours of February 25, 1972. That morning, the plaintiffs and several other on-duty policemen responded to a disturbance call made by Mrs. Walker, the owner of a building at 9251 South King Drive in Chicago. Mrs. Walker had complained that a tenant, Lavella Rogers, was disturbing other tenants by playing loud music. Arriving at the scene, Zions and his patrol partner, Carioscia, discovered that two other policemen, Victor Howard and Robert Smith were already there and had quieted the disturbance. While discussing the situation among themselves, the officers, including two other backup policemen who had also arrived, Officers Amendola and Matejko, heard Mrs. Walker pounding on her apartment window, shouting that she had just been

threatened by Rogers. The officers then entered the building and ran up a stairway to the Rogers apartment.

Inside the apartment Officer Matejko had an argument with Rogers. Richard Leftridge, a friend of Rogers, intervened, resulting in an altercation in which Leftridge was wrestled to the floor, and physically restrained by a number of officers, including Carioscia but not Zions. In the course of the struggle, Leftridge was struck in the face by Officer Matejko's club. Leftridge, who suffered an injury to his eye from the blow he received, filed a complaint with the Board.

Subsequently, Zions and Carioscia were each charged with making a false report and failing to report the improper conduct of their fellow officers—violations of department rules 13 and 21 respectively. Officer Carioscia was also charged with violating two additional rules: Impeding the department's efforts to achieve its goals or bringing discredit upon the department (rule 2), and willful maltreatment or disrespect to any person (rule 8).

At the hearing on these charges, the Board considered only evidence presented by stipulation. It consisted of the following: Statements from Zions and Carioscia taken by the Police Department Internal Affairs Division approximately 1 month after the incident; stipulated abstracts of the testimony of Leftridge, Rogers, and Officers Howard and Smith in an action in a Federal court proceeding in which Zions and Carioscia were charged with violations of criminal laws in connection with the occurrence in which Leftridge was injured; and an abstract of a deposition given by Carioscia in a civil action against him based on his conduct during that occurrence. Because all of the evidence was stipulated, the Board neither had the opportunity to observe the demeanor of the witnesses nor to ask additional questions.

■■ The function of this court is limited to determining whether the Board's decision is contrary to the manifest weight of the evidence. Unless an administrative board has abused its discretion or its decision is not substantially supported by the evidence or is clearly wrong, this court may not substitute its judgment for that of the board, even though this court would have drawn other inferences from the evidence. (*Scuderi v. Industrial Com.* (1978), 73 Ill. 2d 277, 383 N.E.2d 174; *Aarco American, Inc. v. Baylor* (1974), 18 Ill. App. 3d 14, 309 N.E.2d 380; *Suttle v. Police Board* (1973), 11 Ill. App. 3d 576, 297 N.E.2d 174.) The guidelines for this court's review of the decision of an administrative body were explained in *Lieberman v. Rochford* (1976), 43 Ill. App. 3d 1001, 1003, 358 N.E.2d 287:

> "While the findings and conclusions of an administrative agency are to be held *prima facie* true and correct * * * our supreme court has construed this provision to limit the function of the

reviewing court to ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence. * * * Moreover, a reviewing court will not reweigh the evidence and determine the credibility of the witnesses. * * * A reviewing court may, however, reverse an administrative body's findings where the findings of that body are against the manifest weight of the evidence. * * * An examination will thus be made on review to determine whether enough evidence exists on record to support the findings of violation."

Zions was charged with including a false report in his statement to the Internal Affairs Division of the Chicago Police Department. When asked to state everything he could regarding the incident, Zions responded that "* * * [W]e, Amendola, Matejko and Carioscia and myself went up the stairs. I was the last one." In this declaration Zions failed to account for Smith's and Howard's whereabouts on the stairs. In reliance upon Howard's stipulated version of the occurrence to the effect that he and Smith followed the others to the apartment, the Board apparently reasoned that Zions must have been aware of their presence behind him on the stairway. The Board concluded that by not including Smith and Howard in his statement, Zions made a false report.

■ The evidence was not sufficient to establish that Zions' failure to state that Howard and Smith also came up the stairs was intentional or even a falsehood. Viewing the context in which he made his statement, we find no affirmative attempt by Zions to make a misleading statement. Instead, we find Zions answering the report's open-ended question by stating the facts as he remembered them. Zions never specifically denied Smith's and Howard's presence on the stairs or in the apartment for he was never specifically asked where they were. His failure to mention Smith and Howard makes Zions' report at the most incomplete—not false.

Accepting Howard's statement as true, it reveals only what Howard, and not Zions, saw and experienced. There was no evidence to establish that Zions knew Smith and Howard were behind him on the stairway. The fact that Howard's testimony is contradicted by other witnesses including his own patrol partner, Officer Smith, suggests the possibility that either because of the physical layout of the apartment and stairwell or because of the officers' timing or speed in proceeding up the stairs, Zions may not have been aware of Smith's and Howard's presence behind him. Rogers' testimony, for instance, shows that she too was unaware of Howard's and Smith's presence:

"* * * [T]hen three officers came in, and then another police officer came in a couple of minutes later. * * * I later noticed the first two officers who had been at the apartment standing in the doorway after Leftridge was struck in the eye."

Our examination of this and other conflicting accounts is not directed to discrediting Howard's testimony, but only to illustrate that the evidence was not adequate to substantially support a finding of Zions' guilt. Without further evidence, showing the physical layout of the apartment and stairwell and how long after Zions ran up the stairway Smith and Howard followed, the Board's inference that Zions knew Howard and Smith were behind him and omitted this fact from his report is unsupportable. As this court recently stated in another police board review, "[T]he Board has relied on an inference so lacking in substance that it cannot support its finding." (*Tinner v. Police Board* (1978), 62 Ill. App. 3d 204, 209, 378 N.E.2d 1166.) There are too many missing facts to show or warrant the inference that Howard's statement and Zions' report are irreconcilable.

The Board's decision that Zions violated department rule 21 by failing to report his fellow officer's misconduct is also against the manifest weight of the evidence. The evidence, which again here is found primarily in Howard's statement, does not establish that Zions knew of the circumstances surrounding Leftridge's injuries. Howard said that while in the apartment he never saw Zions leave and that Zions afterwards helped take the injured Leftridge down to the squad car. From this the Board inferred that Zions must have been present when Leftridge was injured and must have observed the injuries being inflicted.

■■ Statements of persons other than Howard reveal that there was a great deal of confusion in the Rogers apartment during the brief time the melee between Leftridge and the police officers lasted. In the midst of the confusion and movement created by the struggle, that Howard did not see Zions leave the apartment does not prove that Zions did not leave—rather, only that Howard did not see him leave. Even if Zions happened to be in the apartment when Leftridge received his injury, there is no evidence that his attention was on Leftridge at that precise time instead of being drawn elsewhere. That no one, including Howard, stated that Zions participated in the brawl increases the likelihood that he did not actually witness the injury being inflicted. Although Zions was aware that Leftridge had been injured, none of the evidence presented to the Board showed that Zions observed that the injury was inflicted because of misconduct on the part of his fellow officers. The evidence is not sufficient to establish that Zions knew of misconduct by his fellow officers.

■ We next consider Carioscia's appeal and his contention that the findings of the Board relating to him were against the manifest weight of the evidence. The basis for his discharge was the Board's determination that he had violated police department rules 2, 8, 13 and 21. This court agrees with the Board's decision with respect to violations 8 and 21; we

also believe that these violations constitute sufficient cause for dismissal, and accordingly we need not consider Carioscia's arguments regarding violations 2 and 13.

In finding Carioscia guilty of disrespect to or willful maltreatment of any person, a violation of rule 8, the Board relied upon evidence which implicated Carioscia in participating in an active and physical way in the struggle with Leftridge. Officer Howard observed that Leftridge was "taken to the floor by Officer Carioscia." He stated that while Leftridge was on the floor, he saw Officer Amendola, Officer Matejko and Officer Carioscia beat and kick him.

■ Carioscia points to the statement of Rogers who was unable to identify him as one of Leftridge's assailants, as well as to Smith's statement that he did not see any officer strike Leftridge in the face or kick Leftridge while he was on the floor. A court of review cannot substitute its judgment for that of the Board; its only function is to ascertain whether the Board's judgment is supported by competent evidence. (See *Cobin v. Pollution Control Board* (1974), 16 Ill. App. 3d 958, 966, 307 N.E.2d 191; *Golden Egg Club, Inc. v. Illinois Liquor Control Com.* (1970), 124 Ill. App. 2d 241, 260 N.E.2d 329.) The Board's decision to disregard accounts favorable to Carioscia but instead rely on Officer Howard's testimony is within the purview of the Board's authority, and is both sound and proper. Unlike the situation in the case of Zions where evidence needed to fasten improper conduct on Zions was missing, the evidence Carioscia argues exculpates him merely raises issues of credibility. Even though Howard's statements were contradicted by or inconsistent with other evidence, it was within the Board's province to rely on Howard's account which established Carioscia's guilt, in preference to the other evidence. *Crowell v. Police Board* (1975), 32 Ill. App. 3d 552, 336 N.E.2d 573.

■■ Carioscia also requests this court to consider that he was acquitted in a criminal trial before the United States District Court for the Northern District of Illinois, which involved charges relating to this occurrence. In considering Carioscia's criminal liability for Leftridge's injuries, the District Court utilized a stricter standard of proof than the Police Board was required to employ. Accordingly, the decision of the District Court is not relevant to Carioscia's appearance before the Board.

■■ We also affirm the Board's decision that Carioscia violated rule 21 by not reporting his fellow officers' misconduct. There is no evidence to suggest that Carioscia did not see the struggle or the injury being inflicted. In fact his participation in the struggle along with Amendola and Matejko necessitates the inference that he observed his fellow officers' misconduct.

Having decided that the findings of the Board were not against the manifest weight of the evidence in the case of Carioscia, it is necessary to consider whether his conduct is proper cause for his dismissal. No

policeman may be discharged except for cause. (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—18.1.) Once cause is established, a court should not reverse the Board's disposition "as long as it is related to the requirements of the service and not so trivial as to be unreasonable." *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 441, 352 N.E.2d 389.

■■ ■ Officer Carioscia had a fine record on the police force, but nevertheless the Board's conclusion that his conduct justifies his dismissal is proper. His involvement in beating up and seriously injuring a civilian, and his failure to report his fellow officers' misconduct are not trivial infractions. It is appropriate to appraise Officer Carioscia's misconduct on the basis of the standards set forth in *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 37, 234 N.E.2d 339, which held "cause" to be "some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." A brutal and unwarranted physical attack upon a member of the public by a police officer is a valid reason for his separation from the force. Accordingly, we affirm Carioscia's dismissal.

Judgment reversed with respect to plaintiff Zions, affirmed with respect to plaintiff Carioscia.

McNAMARA and JIGANTI, JJ., concur.