GLADYS PEREZ, d/b/a Mexico Driving School, *et al.*, Petitioners-Appellants, *v.* JIM EDGAR, Secretary of State, Respondent-Appellee.

First District (3rd Division)    No. 81-1053

Opinion filed May 19, 1982.

Edward M. Burke, of Klafter, Burke & Nathan, of Chicago, for appellants.

Tyrone C. Fahner, Attorney General, of Chicago (William E. Dicks, Jr., Special Assistant Attorney General, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Gladys Perez d/b/a Mexico Driving School and Pedro Vignettes, sought judicial review of the revocation by the Secretary of State of Perez' commercial driving school license and Vignettes' instructor's license. Revocation was based on a finding by the State, after a hearing, that plaintiffs violated an Illinois statute and a Secretary of State rule by permitting fraud and engaging in fraudulent practices, and by advertising a guarantee and contracting to guarantee a driver's license upon completion of the course. The trial court upheld the revocations. On appeal, plaintiffs contend that the hearing officer applied a lesser burden of proof than that required; that the charges were not proved by clear and convincing evidence; that the hearing officer admitted evidence acquired in violation of plaintiffs' constitutional rights; that the evidence failed to establish a violation of rule or statute; that it was error to impute to Perez the alleged fraud of Vignettes; and that the sanction of revocation was excessively harsh.

Vignettes and Perez were husband and wife. They were the operators of the driving school. Perez was listed as the owner of the school license, and Vignettes was an instructor and manager of the school.

Maurico Acosta, an agent for the United States Immigration and Naturalization Service, testified that on November 19, 1980, he visited the driving school and, pretending to have trouble with English, asked Vignettes if he could purchase a driver's license without taking the required examination. Acosta was acting in cooperation with Roberta Baskin, a reporter who was conducting a television investigation into the practices of Latino driving schools in the Chicago area. Vignettes stated that the cost of the drivers' training course was $75 or $85 but that if instruction proved impossible he could obtain a license for $225.

Vignettes then took Acosta to the main school where Perez attempted in vain to teach Acosta to memorize the license examination. Acosta told plaintiffs that he preferred to get his license in the way he had discussed with Vignettes. They both assured him that if he returned on Friday he could obtain his license. When Acosta returned, Perez assured him that he would have no trouble getting his license that afternoon if he followed Vignettes' instruction. Perez admittedly did not believe Acosta was qualified to pass the examination.

That afternoon Vignettes took Acosta and other applicants to a State drivers license facility. He told Acosta to wait while he went in and "got things taken care of." After spending approximately 10 minutes in an area restricted to State employees, Vignettes returned and told Acosta to have his identification ready. Acosta had previously informed Vignettes that his identification (green card) was counterfeit. Vignettes directed Acosta to an examiner who failed to request any identification despite a requirement that each applicant produce three forms of identification. The examiner merely wrote "green card" on the application and asked Acosta to sign it and take it to the cashier.

Acosta took the eye examination with his glasses on and passed it although he deliberately missed two letters. Contrary to established procedure he was never requested to read a line of the chart without his glasses.

The written examination consisted of 35 questions, 28 of which had to be answered correctly in order to pass. Acosta answered only 10 questions, five or six of which he answered incorrectly. The examiner filled in the uncompleted portion of Acosta's examination and marked it "passed."

Before taking the road test, Acosta entered an automobile with Vignettes and paid Vignettes $225. When Acosta expressed concern as to whether he would pass the test Vignettes told him not to worry "because it was already taken care of." For the first time Vignettes asked Acosta whether he could drive. Before leaving, Vignettes told Acosta that if he

knew anyone else who wanted to obtain a license in this manner he should notify Vignettes.

Acosta then took the road test. A road test consists of a vehicle inspection and the actual driving test. Acosta testified that the vehicle was never inspected. During the driving test Acosta made several mistakes, two of which should have resulted in automatic failure. He drove the vehicle over a curb and he released the steering wheel with both hands forcing the examiner to take control of the vehicle. Although Acosta was not required to park the vehicle, he received grades for proper parking. In spite of these mistakes and irregularities, Acosta passed the road test and was given his driver's license.

Following receipt of his license, Acosta joined Baskin in a TV van where he gave her a statement concerning what had just occurred. Gary Rennick, another Federal agent who was aiding Baskin in her investigation, was also present. Acosta reported the incident to his superiors the following week.

Plaintiffs initially contend that the hearing officer erred in failing to exclude the testimony of Acosta, Rennick and Baskin because they violated State and Federal statutes and infringed upon plaintiffs' fourth amendment rights when they conducted the investigation. Specifically, plaintiffs maintain that Acosta and Rennick conspired with Baskin to violate 18 U.S.C. sec. 1905 (1976), and that Acosta did violate the act when he divulged the fruits of his investigation to Baskin; that Baskin violated section 14 of "An Act to provide for Licensing and Regulating Detectives * * *" (Ill. Rev. Stat. 1979, ch. 111, par. 2626) when she took part in the investigation; and that Acosta had no legitimate right to enter plaintiffs' premises to conduct the investigation. Plaintiffs urge that the exclusionary rule should have been invoked with regard to all evidence resulting from these alleged violations.

The basic purpose of the exclusionary rule is to safeguard an individual's constitutional right to a reasonable expectation of privacy by excluding evidence seized by the government in violation of that right. Ordinarily the rule applies only to criminal trials. Relying on dicta in *Angelini v. United States* (N.D. Ill. 1970), 322 F. Supp. 698, plaintiffs argue that Illinois has extended the right to license revocations. We need not decide that issue, however, since plaintiffs failed to show any constitutional violations which would warrant the imposition of the rule even if this were a criminal case.

Section 1905 (18 U.S.C. sec. 1905 (1976)) provides sanctions for disclosure by a government employee of certain information obtained in the course of his employment. Since it is concerned only with the disclosure of information and not with its seizure, violation of section 1905 would not trigger application of the exclusionary rule.

■■ Plaintiffs' position that violation of an Illinois statute (Ill. Rev. Stat. 1979, ch. 111, par. 2626) by Baskin warranted invocation of the exclusionary rule is similarly inaccurate. Sections 1 and 14 of "An Act to provide for Licensing and Regulating Detectives * * *" merely define the private detective business and provide sanctions for one who engages in such business without a certificate of registration. (Ill. Rev. Stat. 1979, ch. 111, pars. 2601, 2626.) Its alleged violation by Baskin, a private person, in this case is totally unrelated to the fourth amendment guarantee against unwarranted governmental intrusion on an individual's reasonable expectation of privacy. (*United States v. Newton* (7th Cir. 1975), 510 F.2d 1149.) Furthermore, plaintiffs' position that Baskin, a reporter, was engaged in the private detective business and needed State certification in order to conduct the investigation for the purpose of writing about it, not only raises serious first amendment questions but has no support in the law.

■■ We likewise reject plaintiffs' contention that Acosta invaded their fourth amendment right to privacy when he entered the premises of plaintiffs' driving school without probable cause to believe that they had committed any Federal offense. The fourth amendment protection extends only to privacy expectations which are reasonable. (*Hoffa v. United States* (1966), 385 U.S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408.) Since plaintiffs obviously consented to Acosta's presence on the premises, it was not reasonable for them to expect that he would keep secret what he learned. Nor does the fourth amendment protect plaintiffs' misplaced belief that Acosta, with whom they voluntarily conversed, would not reveal that conversation. *Hoffa v. United States.*

Plaintiffs next contend that the hearing officer erred in requiring that the charges be proved by a preponderance of the evidence. Relying on *Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 75 N.E.2d 303, and *Wilkey v. Illinois Racing Board* (1978), 65 Ill. App. 3d 534, 381 N.E.2d 1380, plaintiffs urge that where, as here, the proceedings are civil in nature but criminal conduct is charged, a more exacting standard of proof is required. In *Drezner* the court held that, while the charge need only be proved by a preponderance of the evidence, "the evidence of guilt should be clear and convincing." We find, however, that whether or not the additional *Drezner* test applies in the present case, the evidence presented at the hearing satisfied both standards.

Plaintiffs argue that the evidence failed to show a violation of either an Illinois statute or of the rules and regulations of the Secretary of State. Section 6—420 of the Driver Licensing Law (Ill. Rev. Stat. 1979, ch. 95½, par. 6—420) provides in pertinent part:

> "The Secretary may cancel, suspend or revoke, or refuse to renew any driver training school license or any driver training instructor license:

* * *

(3) Whenever the licensee permits fraud or engages in fraudulent practices either with reference to a student or the Secretary, or induces or countenances fraud or fraudulent practices on the part of any applicant for a drivers license or permit;

* * *

(8) Whenever a driver training school advertises that a drivers license is guaranteed upon completion of the course of instruction."

Although there is no general rule in Illinois stating what facts constitute fraud (*Zokoych v. Spalding* (1976), 36 Ill. App. 3d 654, 344 N.E.2d 805), it generally encompasses anything calculated to deceive, whether it be a general act or a combination of circumstances. *Hale v. Hale* (1978), 57 Ill. App. 3d 730, 373 N.E.2d 431.

■■ The hearing officer found that Vignettes permitted fraud and engaged in fraudulent practices in violation of section 6—420(3) when he told Acosta that he could obtain a driver's license for $225 without passing the examination and in aiding Acosta to procure one; by knowingly permitting Acosta to use a counterfeit alien registration card in connection with his application; and by inducing employees of the Secretary of State to violate regulations governing the completion of a driver's license application. We conclude that these findings are not only in accord with the manifest weight of the evidence, but they are also supported by evidence which is clear and convincing.

■■ Plaintiffs argue that the hearing officer erred in imputing to Perez the fraudulent conduct of Vignettes. Although Perez denies any knowledge of what transpired at the driving facility, the evidence was sufficiently clear and convincing to support the finding that Perez was not only aware that Vignettes sought to obtain a license for Acosta fraudulently but that she authorized his actions and, as owner of the school, planned to benefit therefrom. (*S & F Corp. v. Bilandic* (1978), 62 Ill. App. 3d 193, 378 N.E.2d 1137.) This finding was based on the hearing officer's acceptance of Acosta's testimony rather than that of Perez. It was the province of the hearing officer to determine the credibility of the witnesses, and we find that his determination was not against the manifest weight of the evidence. (*Crowell v. Police Board* (1975), 32 Ill. App. 3d 552, 336 N.E.2d 573.) Furthermore, we find clear and convincing support for the hearing officer's finding that Perez actively participated in Vignettes' fraudulent practices when she told Acosta that he would have no trouble obtaining a license if he followed Vignettes' instruction even though she believed Acosta to be unqualified.

Since violation of section 6—420(3) was sufficient to warrant revocation of plaintiffs' license, we need not consider whether the evidence demonstrated a violation of section 6—420(8).

Plaintiffs further contend that the evidence failed to show a violation by plaintiff of Rule 6—408 C.3 of the Rules of the Secretary of State. The rule prohibits a driver training school from including "any statement in any of its *contracts or advertising* to the effect that an Illinois driver's license is *guaranteed * * *.*" (Emphasis added.)

■■ We find no merit in plaintiffs' position that violation of this rule is dependent upon its use of the word "guarantee." Vignettes' statement to Acosta that he could obtain a license for $225 without passing the test was a sufficient guarantee to bring his conduct within the prohibitions of the rule. Similarly, Perez' assurance to Acosta that he would obtain his license that day if he followed Vignettes' instruction was in essence a guarantee.

■■ We likewise reject plaintiffs' argument that, since the contract or agreement between the parties violated the rule and statute, it was illegal and void and therefore not a "contract" for the purposes of this rule. Adoption of plaintiffs' strained interpretation of this provision would have the ludicrous effect of making violation of the provision impossible. Furthermore, it would violate a fundamental rule of statutory construction which requires courts to construe a statute so as to accord significance and effect, if possible, to every sentence, phrase and word without destroying the sense and effect of the law. (*People v. Warren* (1977), 69 Ill. 2d 620, 373 N.E.2d 10.) We find clear and convincing evidence in the present case that an oral contract existed between plaintiffs and Acosta sufficient to violate Rule 6—408 C.3. Consequently, we need not address plaintiffs' other argument that they did not "advertise" a guarantee.

■■ We finally consider the contention that the sanction imposed against Perez was excessively harsh. The Secretary of State is vested with discretion in selecting the appropriate sanction for violation of the statute and rule in question. Courts will not substitute their judgment for that of the Secretary of State absent a showing that he abused his discretion by acting arbitrarily and capriciously. (*Zions v. Police Board* (1978), 67 Ill. App. 3d 680, 385 N.E.2d 51.) In light of the overwhelming evidence that Vignettes engaged in fraudulent practices and that Perez was an active participant in that fraud, we find that the Secretary did not abuse his discretion in revoking Perez' license. Her conduct was not only illegal but also constituted a threat to public safety.

For the foregoing reasons, the judgment of the circuit court of Cook County upholding the decision of the Secretary of State is affirmed.

Judgment affirmed.

WHITE, P. J., and RIZZI, J., concur.