BENJAMIN SAVAGLIO, Plaintiff-Appellee, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF OAK BROOK *et al.*, Defendants-Appellants.

Second District   No. 2—83—0737

Opinion filed June 29, 1984.

John H. Brechin, Village Attorney, and Richard N. Williams, both of Oak Brook, for appellants.

Aldo E. Botti and Peter A. Monahan, both of Botti, Marinaccio & Maksym, Ltd., of Oak Brook, for appellee.

JUSTICE NASH delivered the opinion of the court:

Defendant, board of fire and police commissioners of the village of Oak Brook, appeals from an order of the circuit court which reversed the decision of the board that plaintiff, Benjamin Savaglio, be discharged from his employment as a police officer and ordered his reinstatement with back pay. The board contends (1) that its findings and conclusion in the administrative hearing were not contrary to the manifest weight of the evidence, as determined by the trial court; (2) that the introduction of polygraph evidence at the administrative

hearing was not reversible error; and (3) that the trial court exceeded its authority in ordering plaintiff reinstated and awarding him back pay. The board also appeals from an order of the trial court which awarded plaintiff attorney fees incurred in pursuit of a rule to show cause against the board for its alleged contempt in failing to comply with the order of reinstatement.

On December 28, 1981, charges were filed by the chief of police with the board against plaintiff which stated that on October 14, 1981, while on duty, plaintiff, without authority, entered a vehicle parked on private property, thus committing criminal trespass to a vehicle (Ill. Rev. Stat. 1981, ch. 38, par. 21—2); tampering with a motor vehicle (Ill. Rev. Stat. 1981, ch. 95½, par. 4—102(a)(2)); and official misconduct (Ill. Rev. Stat. 1981, ch. 38, par. 33—3). It was also charged that plaintiff's unauthorized entry of the vehicle violated certain rules and regulations of the village of Oak Brook police department.

In hearings conducted by the board, it was disclosed that Christopher Higgins owned an inoperable 1978 Ford van which he stored on the parking lot of his employer, Champion Auto Parts Rebuilders in Oak Brook. Higgins worked on the van in his spare time using his employer's tools, and it had been parked on the lot for about 10 months. On October 13, Higgins worked on the van from 5 until 7:30 p.m., and he testified that he left three sets of socket wrenches in the unlocked van. He stated that when he returned the next day after 5 p.m., the wrenches were missing and that they were valued at about $250. As there had been numerous thefts in and around the premises, the parking lot was surveyed by video cameras which, at intervals, recorded views of the area. Higgins viewed the tape for the night of October 13, and it revealed that an Oak Brook squad car had appeared in the parking lot at 1:10 a.m., 1:21 a.m., 3:10 a.m. and 5:58 a.m. On two of the observations of the squad car it had its headlights out and on one occasion it stopped near the van for about a minute. The quality of the tape was not good, and it did not show anyone enter or go near the van that night. The tape did show several other persons and vehicles around the van during the day; the tape was removed about 2:30 p.m. on October 14 and no further surveillance was done until after discovery of the alleged theft.

Higgins called the police and filed a theft report. He expressed the opinion that a policeman must have stolen the tools because a squad car was observed to have stopped near the van with its lights out. Lieutenant Janik interviewed all officers working the 11 p.m. October 13 to 7 a.m. October 14 shift and determined the only officer in

the lot during that period was plaintiff.

On October 22, plaintiff was called to Lieutenant Janik's office and questioned whether he had made patrol trips to the lot and if he had done so at any time without headlights. Plaintiff responded that he had patrolled the lot and did drive through it with his headlights off and stopped next to a white van. Plaintiff stated that he looked inside the van and saw an engine, parts and some tools. He told Lieutenant Janik that he took nothing out of the van and inquired what was wrong. Lieutenant Janik then advised plaintiff that he had a video tape which had been reviewed by the victim who claimed he was missing tools from the van; he did not ask plaintiff why he had entered the van. Janik testified at the hearing that plaintiff's demeanor was not "normal" during the interview and he had determined that plaintiff should be ordered to take a polygraph examination. Plaintiff first declined to submit to it, but after being advised by the police chief that he would be terminated if he refused, the test was conducted. At the hearing, the polygraph examiner testified it was his opinion there was evidence of a purposeful noncooperation by plaintiff throughout the test which indicated that he was not telling the truth.

Lieutenant Janik also testified that the police radio logs for the shift in question did not show a report by plaintiff of any unusual incidents at Champions' lot which, Janik stated, would be the proper practice for an officer upon leaving his vehicle to investigate or to enter a suspicious car. Lieutenant Janik stated that police department procedure regarding searches of or entry into motor vehicles requires that an officer transmit that information to the commanding officer in the police station. He noted that plaintiff also failed to file a written report. Other officers testified that it was customary to call the base on the radio if action was to be taken with regard to an incident and that a written report would thereafter be made.

Plaintiff testified on his own behalf at the hearing that he had observed the van on the lot for over six months and had checked its license and registration 4½ months previous to the night in question. He stated that as the Champion company had suffered a number of burglaries and thefts, its lot was regularly patrolled by police. While on his second check of the lot on October 14 he thought he saw a movement of shadows or figures out of the corner of his eye in the vicinity of the van. He made a quick right turn and turned off his headlights and then thought he saw movement from the rear of the van. Plaintiff stated he got out of his squad car to check and first looked through the van's windshield. He observed an engine, some tools and a lumpy black tarp and considered someone could be hiding

under the tarp. Plaintiff saw that the door was unlocked and opened it, put his head in and, when he didn't see anyone, closed the door and left. He testified he took nothing from the van and only put his head inside. On his third cruise of the lot later that morning he again turned his headlights off. Plaintiff stated he was not aware of any department procedure which would require calling in before opening a vehicle door.

In its decision, the board found plaintiff to be guilty of criminal trespass to a motor vehicle for entering the van without authority and guilty of official misconduct for entering the vehicle without consent. In addition, the board found plaintiff guilty of violating rules and regulations of the village police department by entering the van without the owner's consent and failing to submit a report regarding the entry. In reaching its decision, the board noted that it placed great weight upon the video tape, the immediate report of the theft of tools by Higgins, plaintiff's failure to call in, and found that plaintiff's conduct when questioned by Lieutenant Janik was not consistent with his innocence. The board specifically noted that in making its findings it gave no legal consideration to the testimony of the polygraph operator. The board concluded that plaintiff's continuance in office would be detrimental to the department and ordered his immediate discharge.

On administrative review, the circuit court found that the polygraph test was incompetent and prejudicial and by itself sufficient to require a reversal of the findings and order of the board. The trial court also found that the competent evidence contained in the record of the hearings before the board did not support its findings which were against the manifest weight of the evidence as to all charges for which the board found plaintiff guilty. The court thereupon reversed the order of the board and remanded the cause to it with directions to reinstate plaintiff with back pay. The board appeals.

In arguing that its decision was not contrary to the manifest weight of the evidence heard by it, the board contends that the trial court improperly reweighed the evidence submitted at the administrative hearing and the credibility of the witnesses, substituting its judgment for that of the board.

■■ It is well settled that the scope of judicial inquiry of factual determinations made by an administrative agency is limited to determining whether the agency's decision was contrary to the manifest weight of the evidence. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105, 449 N.E.2d 115; *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 358-59, 307 N.E.2d 371.) While the

agency findings are considered *prima facie* true and correct, they must be based upon facts established by competent evidence. (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 309, 450 N.E.2d 314, *cert. denied* (1983), 464 U.S. 960, 78 L. Ed. 2d 335, 104 S. Ct. 391.) Where a crime is charged in an administrative proceeding, the requisite burden applicable to prove such crime is by clear and convincing evidence. (*Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 227, 75 N.E.2d 303; *Shallow v. Police Board* (1981), 95 Ill. App. 3d 901, 908, 420 N.E.2d 618, *appeal denied* (1981), 85 Ill. 2d 575.) An administrative agency's decision will not be disturbed unless the opposite conclusion is clearly evident and the trial court may not reweigh the evidence. *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 489, 202 N.E.2d 522.

In making its findings, the board noted it placed great weight on certain evidentiary matters:

The video tape of portions of the night of October 13-14, however, offers no evidence of misconduct on the part of plaintiff. While it shows a police vehicle in the lot, plaintiff advised Lieutenant Janik he had patrolled there during that night and he did so before he had been told of the tape or accused of misconduct. Plaintiff's presence in the lot was in routine performance of his police duties; the record discloses one visit was in response to a false burglar alarm that night. The tape establishes nothing contrary to plaintiff's account of his activities, although it does demonstrate many other persons were near the unlocked van during the day and did not record anyone entering it.

The fact Higgins promptly reported a theft is irrelevant as plaintiff was not charged with theft. The weight given to that fact suggests, however, the board considered whether plaintiff was guilty of that offense in evaluating the evidence.

Nor did the evidence establish that the department rules and regulations required plaintiff to call in to the station or thereafter file a report after investigation of the van. Although Lieutenant Janik testified that was required, Officer Delise, a training officer for five years, testified he knew of no custom, protocol or directive requiring such action when an officer opened a car door to investigate and nothing was found. Other officers testified there was a custom of reporting an "incident" and calling in where action was taken, but no requirement to call the station before opening a vehicle door. Officer Malec testified he had entered a truck parked on business premises that same night, while on patrol, to locate its identification numbers. Malec later called the station to make a registration check of the truck, action not

necessary for plaintiff as he had checked the van's registration several months earlier. We have also considered the General Orders of the department relied upon by the board and do not find they required plaintiff to call in before examining the van or make a report of his fruitless investigation.

The "not normal" demeanor of plaintiff when questioned by Lieutenant Janik, could not assist the board in evaluating the evidence. He had been ordered in for questioning at the end of his shift and made aware suspicion of theft was directed at him. If plaintiff's demeanor was not then normal, alternate explanations other than guilt were apparent.

We also find that the evidence was insufficient to support the board's findings plaintiff committed a criminal trespass of the van or that his actions constituted official misconduct.

■ The gravamen of the offense of criminal trespass to a vehicle is the knowing entry of the vehicle without authority or the consent of the owner. (Ill. Rev. Stat. 1981, ch. 38, par. 21—2; *People v. Pettis* (1982), 104 Ill. App. 3d 275, 277, 432 N.E.2d 935; *People v. Slaughter* (1980), 87 Ill. App. 3d 1066, 1068, 409 N.E.2d 508.) Criminal knowledge is an element of the offense, just as it is of theft. (*People v. Owes* (1972), 5 Ill. App. 3d 936, 938, 284 N.E.2d 465; *People v. Chandler* (1967), 84 Ill. App. 2d 231, 236, 228 N.E.2d 588.) Where a defendant has entered a vehicle not knowing it was stolen, criminal trespass has not occurred. *People v. Posey* (1980), 83 Ill. App. 3d 885, 888, 404 N.E.2d 482; *People v. Owes* (1972), 5 Ill. App. 3d 936, 284 N.E.2d 465.

■ The evidence here is that plaintiff while on routine patrol in an area where thefts had occurred checked a vehicle near which he believed he saw furtive conduct. On noting the van was unlocked, he opened the door and looked inside to determine if someone was there. These facts do not, in our view, permit the conclusion the police officer thus violated the criminal trespass statute; it is manifest that in the performance of their duties police officers routinely make such investigations and, in these circumstances, a "criminal" knowledge on the part of plaintiff may not be inferred. See *People v. Gardner* (1984), 121 Ill. App. 3d 464, 459 N.E.2d 676.

■ Nor does the evidence support the finding of the board that plaintiff was guilty of official misconduct (Ill. Rev. Stat. 1981, ch. 38, par. 33—3). As the trial court noted "[t]here is no evidence whatsoever that the police officer knew he was forbidden to perform an act, to-wit, opening a door, nor that he had any intent to obtain personal advantage for himself nor that the act was in excess of his lawful au-

thority as a police officer." The evidence considered by the board did not establish any mandatory duty which plaintiff failed to perform, a knowing performance of an act forbidden by law or an act done with intent to obtain a personal advantage for himself or another. See *People v. Kleffman* (1980), 90 Ill. App. 3d 1, 412 N.E.2d 1057.

We conclude that the findings of the board were against the manifest weight of the evidence and were correctly reversed by the trial court.

The board next contends that the introduction of the polygraph evidence was not error as the board stated in its findings that it gave no consideration to it.

■ In *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 450 N.E.2d 314, *cert. denied* (1983), 464 U.S. 960, 78 L. Ed. 2d 335, 104 S. Ct. 391, our supreme court held that polygraph evidence was inherently deficient and was inadmissible in an administrative proceeding. The introduction alone of such evidence is reversible error. (See also *Sommer v. Goetze* (1981), 102 Ill. App. 3d 117, 121, 429 N.E.2d 901, *appeal denied* (1982), 91 Ill. 2d 557.) The trial court correctly held in the present case that the introduction of polygraph evidence at the hearing also required reversal.

■ The board's contention that the trial court exceeded its authority in ordering plaintiff reinstated and awarded back pay is meritorious. As this court noted in *Kloss v. Board of Fire & Police Commissioners* (1982), 108 Ill. App. 3d 8, 438 N.E.2d 685, *rev'd on other grounds* (1983), 96 Ill. 2d 252, 449 N.E.2d 845:

> "The administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 274) sets forth the powers of the trial court. While the court can affirm or reverse a Board decision, we can find no authority for the trial court to order reinstatement without a Board hearing. Further, because the record contains no evidence regarding salary, back pay, benefits or set-offs, the court was without authority to enter an order in that regard. [Citations.] The trial court lacked jurisdiction to order Kloss reinstated or to award him back wages." (108 Ill. App. 3d 8, 14, 438 N.E.2d 685, 689-90.)

(See also *Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 231, 75 N.E.2d 303; *Dorner v. Civil Service Com.* (1980), 85 Ill. App. 3d 957, 963, 407 N.E.2d 750; *Basketfield v. Daniel* (1979), 71 Ill. App. 3d 877, 880, 390 N.E.2d 492, *appeal denied* (1979), 79 Ill. 2d 609.) That portion of the trial court's order must be vacated.

The board finally contends the trial court erroneously awarded his attorney fees to plaintiff for costs incurred in presenting a petition

for rule to show cause directed to the board when it refused to reinstate plaintiff after judgment below.

The trial court stayed its judgment as to plaintiff's back pay after the board filed a notice of appeal to this court, but denied the board's request for a stay of that portion of the judgment directing plaintiff's reinstatement and set a hearing date for his petition for rule to show cause. When this court thereafter entered an order staying the entire judgment, the trial court discharged plaintiff's petition, but awarded him the attorney fees incurred in its preparation.

■■ Where there has been a finding of civil contempt, a court may order reimbursement of the complainant's attorney fees incurred in bringing the violation to the court's attention. (*Frank B. Hall & Co. v. Payseur* (1981), 99 Ill. App. 3d 857, 862, 425 N.E.2d 1002.) Here, however, the court lacked authority to award reinstatement or back pay to plaintiff, and defendant could not be guilty of contempt for failing to comply with its order. (*Faris v. Faris* (1966), 35 Ill. 2d 305, 309, 220 N.E.2d 210; *People v. Joseph* (1982), 105 Ill. App. 3d 568, 570, 434 N.E.2d 453.) The order awarding fees must be vacated.

Accordingly, the judgment of the circuit court reversing the order of the board and remanding the cause is affirmed; in all other respects the judgments are reversed. On remand, the board will consider a request for reinstatement or for back pay, if made by plaintiff.

Affirmed in part; reversed in part; remanded with directions.

SEIDENFELD, P.J., and UNVERZAGT, J., concur.